**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SIDNEY L. HAYMAKER, | |
| *Plaintiff*, | CIVIL ACTION |
| v. | NO. 15-06306 |
| RELIANCE STANDARD LIFE INSURANCE CO., et al., | |
| *Defendants*. | |

**PAPPERT, J.**                                                    **April 27, 2016**

**MEMORANDUM**

Plaintiff Sidney L. Haymaker ("Haymaker") sued Defendants Reliance Standard Life Insurance Co. ("Reliance"), I.B.E.W. Local 380 ("the Union"), I.B.E.W. Local 380 Health, Welfare and Pension Plans ("the Plan") and the Trustees of the Health, Welfare and Pension Plans ("the Trustees") (collectively "Defendants"), alleging claims for breach of contract and breach of fiduciary duty. Haymaker's claims stem from the Defendants' alleged failure to notify her late husband ("Mr. Haymaker") of certain privileges afforded to him by a group life insurance policy issued by Reliance to the Union for the benefit of the Union's employees. Had Mr. Haymaker been notified of those privileges, Haymaker contends he would have been eligible for benefits at the time of his death. Before the Court are Defendants' motions to dismiss. For the reasons stated below, the Court grants both motions.

**I.**

Mr. Haymaker passed away on November 25, 2014. (Am. Compl. ¶¶ 1–3, ECF No. 3.) Prior to his death, Mr. Haymaker was a member of the Union. (*Id.* ¶ 4.) As a member, he was insured by a $115,000 group life insurance policy ("the policy") issued by Reliance to the Union for the benefit of the Union's members. (*Id.* ¶¶ 5, 9.) Mr. Haymaker designated his wife as the

beneficiary under the policy. (*Id.* ¶ 5.) The policy generally provides coverage for "a full-time salaried union employee or union member who has worked at least 350 hours per calendar quarter for one or more Employers for 24 months in a row." (*Id.* ¶ 32.) The policy also provides a "Contribution Option" and a "Conversion Privilege" should the member fail to meet the 350 hour eligibility requirement. (*Id.* ¶¶ 33, 37.)

The Contribution Option allows a member who would otherwise lose coverage to continue that coverage for one additional quarter per calendar year by paying the value equivalent of 350 hours of work. (*Id.* ¶ 33.) The Contribution Option also grants the Trustees the ability to waive the payment requirement, thereby allowing a member to continue coverage for an additional quarter per calendar year without paying anything. (*Id.*) The Conversion Privilege affords a member, upon termination of coverage under the policy, the opportunity to convert to an individual policy without having to provide proof of good health. (*Id.* ¶¶ 36–37.) The privilege contains the following notice provision:

> If an insured is entitled to have an individual policy issued to him/her without proof of health, then he/she must be given notice of this right at least fifteen (15) days before the end of the period specified above. Such notice must be: (1) in writing; and (2) presented or mailed to the insured by you. If not, the insured will have an additional period in order to do so. This additional period will end fifteen (15) days after the insured is given notice. This period will not extend beyond sixty (60) days after the expiration date of the period provided above.

(*Id.* Ex. A at 5.13.)

Mr. Haymaker last worked 350 hours in the first quarter of 2013. (*Id.* ¶ 35.) He thus ceased to be eligible for coverage under the policy after the first quarter of 2013. (*Id.* ¶¶ 35, 43.) Haymaker contends that her husband was never notified that his coverage was terminated, or that he could exercise his Contribution Option or Conversion Privilege. (*Id.* ¶¶ 42, 44.) Mr. Haymaker was, however, provided with a "Summary Plan Description" ("SPD") which was

"designed to give [Mr. Haymaker] a summary of [his] benefits so that [he] [could] understand how and when to use them."  (*Id*. Ex. D at *19.)  The SPD outlined, among other things, the Contribution Option, the Conversion Privilege and the policy's eligibility requirements.  (*Id*. at *18–27.)

Mr. Haymaker did not exercise his Contribution Option after he became ineligible under the policy at the end of the first quarter of 2013.  (*Id*. ¶ 39.)  Additionally, the Trustees did not waive the payment requirement.  (*Id*. ¶ 41.)  Mr. Haymaker also failed to exercise his Conversion Privilege within the timeframe set forth in the policy.  (*Id*. ¶ 46.)  Thus, the last day Mr. Haymaker was eligible to receive benefits under the policy was July 1, 2013, roughly seventeen months before he died.  (*Id*. ¶¶ 30, 47.)

Following Mr. Haymaker's death, the Union submitted a "Proof of Loss" ("POL") form to Reliance which identified Mr. Haymaker as "Eligible Class #2."  (*Id*. ¶ 52.)  "Eligible Class #2" signifies that a person is an eligible employee who has worked at least 350 hours per calendar quarter for one or more Employers for 24 months in a row.  (*Id*. Ex. A at 1.7.) Haymaker contends that the Union knew or should have known that this statement was inaccurate.  (*Id*. ¶¶ 49–53.)  Haymaker alleges that the Union "hoped that its fraudulent misrepresentation on the POL would cause [her] to believe (correctly) that Reliance's expected denial of the claim was improper and unlawful, so that [she] would seek legal redress from Reliance only."  (*Id*. ¶ 57.)  She further contends that the Union hoped she would "limit her litigation efforts to Reliance, and/or would exhaust her resources in the course of initially prosecuting her claim against Reliance to such an extent that she would, as a matter of law or practical ability, be unable to seek legal redress from [the Union, Plan and Trustees]."  (*Id*. ¶ 59.)

After receiving the POL form, Reliance reviewed and ultimately denied Haymaker's claim after determining that Mr. Haymaker was not, in fact, eligible under the Plan.  (*Id.* Ex. C.)  Haymaker appealed the denial on April 15, 2015.  (*Id.* Ex. D.)  Reliance issued a final denial letter on July 8, 2015, noting that: (1) Mr. Haymaker failed to exercise his Contribution Option; (2) the Trustees never waived the payment requirement; and (3) Mr. Haymaker never exercised his Conversion Privilege.  (*Id.* ¶¶ 67–68.)

Haymaker filed her complaint on October 5, 2015.  (ECF No. 1, Ex. A.)  The Defendants removed the case to this Court on November 25, 2015.  (ECF No. 1.)  Two days later, Haymaker filed her amended complaint.  (ECF No. 3.)  Reliance filed its motion to dismiss on December 10, 2015.  (ECF No. 5.)  Haymaker responded on January 15, 2016 and Reliance filed its reply four days later.  (ECF Nos. 11–12.)  The Union, Plan and Trustees ("the Union Defendants") filed their motion to dismiss on January 29, 2016.  (ECF No. 13.)  Haymaker responded on February 22 and the Union Defendants replied a week later.  (ECF Nos. 14, 16.)  The Court held oral argument on the motions on April 14, 2016.[1]  (ECF No. 19.)

## II.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The "mere possibility of misconduct" is not enough.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* at 678.

---

[1]     Haymaker's counsel failed to appear for oral argument on the motions.  (ECF No. 19.)  Following the argument, he sent two letters to the Court explaining his absence, and also filed a motion asking the Court not to draw any adverse inferences from his failure to appear.  (ECF Nos. 20–22.)  The Court accepts counsel's explanation and his absence from oral argument in no way affects the Court's analysis.

(quotation and citation omitted).  Speculative and conclusory statements are not enough.  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions . . . a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Furthermore, the court must construe the complaint in the light most favorable to the plaintiff.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (quoting *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009)).  However, while all allegations contained in the complaint must be accepted as true, the court need not give credence to mere "legal conclusions" couched as facts.  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

A court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004).  Whether a complaint states a plausible claim for relief is a context-specific task that "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

Finally, Federal Rule of Civil Procedure 15(a) provides that "courts may grant . . . amendments 'when justice so requires.'"  *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003), *as amended* (Jan. 20, 2004) (citing Fed. R. Civ. P. 15(a)).  While Rule 15 states that "leave to amend should be 'freely given,' a district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Id.*  "Futility" means that the amended complaint would fail to state a

claim upon which relief could be granted.  *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)

(citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).

## III.

The Defendants contend that Haymaker's breach of contract and breach of fiduciary duty

claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

U.S.C. § 1001 *et seq.*  (Reliance Mot. to Dismiss ("Reliance Mot.") at 5, ECF No. 5; Union

Defs.' Mot. to Dismiss ("Union Mot.") at 7, ECF No. 13.)  To determine whether Haymaker's

claims are preempted, the Court must first decide whether the Plan issued by Reliance to the

Union for the benefit of the Union's members is one that qualifies under ERISA.

## A.

An ERISA qualifying plan is defined as "any plan, fund, or program which was . . .

established or maintained by an employer or by an employee organization . . . for the purpose of

providing for its participants or their beneficiaries, through the purchase of insurance or

otherwise," life, health or disability benefits.  29 U.S.C. § 1002(1).  "Employee organization" is

defined as "any labor union or any organization of any kind . . . in which employees participate

and which exists for the purpose, in whole or in part, of dealing with employers concerning an

employee benefit plan . . . ."  29 U.S.C. § 1002(4).  A plan qualifies if, from the surrounding

circumstances, a reasonable person can ascertain: (1) the intended benefits; (2) the class or

classes of beneficiaries; (3) the source of financing; and (4) the procedures for receiving benefits.

*See Deibler v. United Food & Commercial Workers' Local Union 23*, 973 F.2d 206, 209 (3d Cir.

1992) (citation omitted).

All four of these requirements can be found in Mr. Haymaker's policy.  The "intended

benefits" are those listed on page 1.7 of the policy.  (Am. Compl. Ex. A at 1.7.)  The "class[es]

of beneficiaries" are listed on page 7.15.  (*Id.* at 7.15.)  The "source of financing" is the policy

itself, which provides benefits to eligible beneficiaries.  (*Id.* at 1.7.)  Finally, the "procedures for

receiving benefits" are set forth on page 11.20 of the policy.  (*Id.* at 11.20.)  The policy qualifies

under ERISA.  *See, e.g.*, *Int'l Brotherhood of Elec. Workers Local Union No. 380 Health &*

*Welfare Fund v. Travis Elec., Inc.*, No. 07-1649, 2008 WL 2954751, at *1 n.1 (E.D. Pa. July 30,

2008) (finding that the Union's Health, Welfare and Pension plans are "multi-employer welfare

benefits plans" governed by ERISA).

### B.

The Court must next determine whether Haymaker's state law claims are preempted by

ERISA's preemption provision, which provides that ERISA "shall supersede any and all State

laws insofar as they . . . relate to any employee benefit plan" covered by the statute.  *See*

*Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 277 (3d Cir. 2001) (citing 29 U.S.C.

§ 1144(a)).  In passing Section 514(a), Congress intended "to ensure that plans and plan sponsors

would be subject to a uniform body of benefits law."  *New York State Conference of Blue Cross*

*& Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995) (quoting *Ingersoll-Rand Co.*

*v. McClendon*, 498 U.S. 133, 142 (1990)).  "[T]he goal was to minimize the administrative and

financial burden of complying with conflicting directives among States or between States and the

Federal Government . . . , [and to prevent] the potential for conflict in substantive law . . .

requiring the tailoring of plans and employer conduct to the peculiarities of the law of each

jurisdiction."  *Id.* at 656–57 (quoting *Ingersoll-Rand*, 498 U.S. at 142).  The Supreme Court of

the United States has interpreted Section 514(a) to have an "expansive sweep."  *Pilot Life Ins.*

*Co. v. Dedeaux*, 481 U.S. 41, 47 (1987).  Indeed, the phrase "relate to" must be "given its broad

common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of

the phrase, if it has a connection with or reference to such a plan.'" *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983)).

Counts I and III allege breach of contract claims against the Defendants.  Specifically, Haymaker contends that the Defendants failed to adhere to their contractual notice obligations, thereby causing the denial of $115,000 in benefits to which Mr. Haymaker was entitled.  (Am. Compl. ¶¶ 71–84; 100–02.)  Generally, "[s]tate law breach of contract claims are preempted by ERISA's express preemption clause when the contract breached is considered an employee benefit plan under ERISA." *Gilbertson v. Unum Life Ins. Co. of Am.*, No. 03-5732, 2005 WL 1484555, at *2 (E.D. Pa. June 21, 2005) (citing *Pilot Life*, 481 U.S. at 47–48); *see also Pryzbowski*, 245 F.3d at 278 (stating that claims "for denial of benefits, even when the claim is couched in terms of common law negligence or breach of contract," are preempted by ERISA). Since Haymaker's claims allege that the Defendants failed to adhere to their obligations under the policy—and therefore "relate to" the Plan—they are clearly preempted by ERISA.[2]

Counts II and IV allege breach of fiduciary duty claims against the Defendants.  These claims are also preempted by ERISA given that the alleged breaches "relate to" specific provisions of the policy, which is governed by ERISA.[3]  *See, e.g.*, *Mitnik v. Cannon*, 784 F. Supp. 1190, 1195 (E.D. Pa. 1992), *aff'd*, 989 F.2d 488 (3d Cir. 1993) (finding breach of

---

[2]     Haymaker's breach of contract claims also allege that the Defendants' conduct violated the Pennsylvania Wage Payment & Collection Law ("WPCL"), 43 Pa. Cons. Stat. §§ 260.1–260.45, and the conversion notice provision of the Pennsylvania Group Life Insurance Policy Law ("GLIPL"), 40 Pa. Cons. Stat. § 532.7.  (Am. Compl. ¶¶ 77, 79–80, 95, 100.)  ERISA preempts these claims as well. *See, e.g.*, *McMahon v. McDowell*, 794 F.2d 100, 107 (3d Cir. 1986) (stating that "[t]he conclusion is inescapable that the WPCL relates to the . . . benefit plans in a way that Congress sought to foreclose"); *Terry v. Northrop Grumman Health Plan*, 989 F. Supp. 2d 401, 410 (M.D. Pa. 2013) (finding Section 532.7 of GLIPL preempted by ERISA).

        Haymaker also cites a Pennsylvania Insurance Fraud Statute which was "intended to advance [her] claim that [the Union] defendants lacked 'good faith' under the WPCL."  (Pl.'s Resp. to Union Mot. at 2 n.1, ECF No. 15.) Haymaker's WPCL claim is preempted and the Court need not address this argument.

[3]     The grounds for Haymaker's breach of fiduciary duty and breach of contract claims are materially the same.  Thus, her breach of fiduciary duty claim, to the extent it repeats the allegation of a GLIPL violation, is also preempted. *See supra* n.2.

fiduciary duty claims to be "the type that ERISA was designed to [preempt]").  For the above reasons, Haymaker's complaint is preempted by ERISA in its entirety.

## IV.

Haymaker has not sought leave to amend her complaint for a second time to allege her claims under ERISA.  In any event, amendment would be futile given that her claims also fail when construed to allege ERISA violations.  To the extent Haymaker's claims seek benefits under Section 502(a)(1)(B), those claims fail based on her own allegations.  Specifically, Haymaker concedes that "Mr. Haymaker ceased to be eligible for life insurance coverage under the Reliance Policy on or about July 1, 2013," and failed to exercise either his Contribution Option or his Conversion Privilege.  (Am. Compl. ¶¶ 39, 46–47.)

To the extent Haymaker's claims allege a breach of fiduciary duty claim under ERISA Section 502(a)(3), those claims also fail.  Although Haymaker vaguely asserts that the Defendants owed Mr. Haymaker "fiduciary obligations," her complaint revolves around the alleged failure to notify Mr. Haymaker about: (1) his Contribution Option and (2) his Conversion Privilege.  (*See generally* Am. Compl.)  She also contends that the Union's labeling of Mr. Haymaker as "Eligible Class #2" constitutes a breach of fiduciary duty.  (*Id.*)

A plaintiff may bring a breach of fiduciary duty claim under ERISA Section 502(a)(3), which "authorizes the award of 'appropriate equitable relief' directly to a participant or beneficiary to redress any act or practice which violates the provisions of ERISA."  *Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1299 (3d Cir. 1993) (citing 29 U.S.C. § 1132(a)(3)).  Commonly referred to as the "catchall" provision, Section 502(a)(3) "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy."  *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).

To establish a claim for breach of fiduciary duty under ERISA, "a plaintiff must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation." *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 73 (3d Cir. 2001).

A person is a "fiduciary" to the extent they, in relevant part: (1) exercise any discretionary authority or control over the management of an ERISA plan or exercise any authority or control over the management or disposition of its assets; or (2) have any discretionary authority or responsibility in the administration of an ERISA plan. *See* 29 U.S.C. § 1002(21)(A). Haymaker fails to allege facts establishing that Reliance administered or managed the Plan or its assets in any way. The only allegations specifically identifying Reliance contend that it issued a group policy to the Union for the benefit of the Union's members, conducted an investigation after the POL form was submitted and denied Haymaker's claim for benefits. (*See generally* Am. Compl.) These allegations fail to establish that Reliance was acting as a "fiduciary" as defined by ERISA. Although her allegations as to the Union Defendants are similarly lacking in specificity, the Court will assume that the Union Defendants owed fiduciary obligations to Mr. Haymaker.[4]

Haymaker must next show that the Union Defendants made misrepresentations in violation of their fiduciary duties. *See Daniels*, 263 F.3d at 73. ERISA requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." *Godshall v.*

---

[4]     Haymaker's allegations make no distinction between the Union, the Plan and the Trustees, all of which are distinct entities under the law. Because her claims fail on a number of other grounds, the Court assumes that all three entities were "fiduciaries" under ERISA.

*Franklin Mint Co.*, 285 F. Supp. 2d 628, 632 (E.D. Pa. 2003) (citing 29 U.S.C. § 1104(a)(1)(A)).

The Third Circuit Court of Appeals has since interpreted this provision to mean that "a fiduciary

has a legal duty to disclose to the beneficiary only those material facts, known to the fiduciary

but unknown to the beneficiary, which the beneficiary must know for its own protection."

*Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc.*, 93 F.3d

1171, 1182 (3d Cir. 1996).  However, "participants have a duty to inform themselves of the

details provided in their plans."  *Jordan v. Fed. Exp. Corp.*, 116 F.3d 1005, 1016 (3d Cir. 1997)

(citing *Genter v. Acme Scale & Supply Co.*, 776 F.2d 1180, 1185 (3d Cir. 1985)).

     Haymaker first alleges that the Union Defendants failed to notify her husband of his

Conversion Privilege and Contribution Option.  (Am. Compl. ¶¶ 39–44.)  This claim is vitiated

by the SPD attached to Haymaker's complaint, which was given to Mr. Haymaker and described

both the Contribution Option and the Conversion Privilege.  (*Id*. Ex. D at *25–26.)  Thus, there

was no misrepresentation or omission that could support a breach of fiduciary claim.  Moreover,

the Third Circuit has noted "that a fiduciary may satisfy its statutory disclosure obligations

regarding the terms of a plan by distributing a summary plan description that complies with

ERISA."  *In re Unisys Corp. Retiree Med. Ben. ERISA Litig.*, 57 F.3d 1255, 1263–64 (3d Cir.

1995); *see also Allen v. Atlantic Richfield Retirement Plan*, 480 F. Supp. 848 (E.D. Pa. 1979),

*aff'd*, 633 F.2d 209 (3d Cir. 1980) (stating that "Congress did not intend to impose a duty to

provide the kind of individualized attention urged by plaintiff here, but rather envisioned that a

fiduciary could discharge its obligations through the use of an explanatory booklet"); *Shlomchik

v. Retirement Plan of Amalgamated Ins. Fund*, 502 F. Supp. 240 (E.D. Pa. 1980), *aff'd*, 671 F.2d

496 (3d Cir. 1981) (finding "no duty on the part of defendants to provide this particular

employee with individualized attention"); *Shiffler v. Equitable Life Assurance Soc. of the U.S.*,

838 F.2d 78 (3d Cir. 1988) (rejecting argument that a fiduciary owed an obligation to a beneficiary to explain the terms of a written plan).

Haymaker also contends that the Union Defendants purposefully wrote "Eligible Class #2" on Mr. Haymaker's POL form, hoping "that its fraudulent misrepresentation on the POL would cause [Haymaker] to believe (correctly) that Reliance's expected denial of the claim was improper and unlawful, so that [she] would seek legal redress from Reliance only." (Am Compl. ¶¶ 49–53, 57.) This allegation is conclusory, speculative and not entitled to the presumption of truth. *Twombly*, 550 U.S. at 555. Additionally, it is unclear how this could constitute a breach of fiduciary duty where Mr. Haymaker, at the time of his death, was ineligible for benefits under the policy. In any event, the misrepresentation did not deter her from filing this lawsuit.

Haymaker's amended complaint is accordingly dismissed without leave to amend as any purported amendment would be futile. An appropriate order follows.


BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

12